1   MELINDA HAAG (CABN 132612)
    United States Attorney
2
    MIRANDA KANE (CABN 150630)
3   Chief, Criminal Division

4   DEBORAH R. DOUGLAS (NYBN 2099372)
    Assistant United States Attorney
5
        450 Golden Gate Avenue, 9th Floor
6       San Francisco, California 94102
        Telephone: (415) 436-7200
7       Facsimile: (415) 436-7234
        E-Mail: deborah.r.douglas@usdoj.gov
8
    Attorneys for Plaintiff
9
                    UNITED STATES DISTRICT COURT
10
                 NORTHERN DISTRICT OF CALIFORNIA
11
                         OAKLAND DIVISION
12
    UNITED STATES OF AMERICA,          )   No. CR 10-00524 DLJ
13                                     )
                 Plaintiff,            )   UNITED STATES' OPPOSITION TO
14                                     )   DEFENDANT'S APPEAL OF THE
            v.                         )   MAGISTRATE JUDGE'S DETENTION
15                                     )   ORDER
    CHERRYL WORLEY aka CHERRYL         )
16  FERGUSON,                          )
                                       )
17               Defendant.            )
                                       )
18
19
20
21
22
23
24
25
26
27
28

## I.  **INTRODUCTION**

After a detention hearing on January 14, 2011, defendant Cherryl Worley ("defendant") was ordered detained by Magistrate Judge Donna M. Ryu as set forth in the detention order filed on January 18, 2011 (*see* Attachment A). Defendant is a danger to the community and there are no combination of conditions that would reasonably protect the public. Moreover, defendant has a fundamental lack of respect for other people and the rules of law – and cannot be trusted to obey court orders or comply with conditions of release. Defendant is a recidivist criminal and a predator who creates havoc and hardship wherever she goes.   The devastating impact of the theft of her victims' identities and the use of that personal information for defendant's economic gain is not limited to financial harm, but constitutes an assault upon the victim's well-being and sense of security. It is a criminal intrusion that can result in years of distress for victims, and the expenditure of their time and resources, as they attempt to clear their names and regain their identities.

## II. **STANDARD OF REVIEW**

The Bail Reform Act of 1984 permits pretrial detention of a defendant without bail where "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e). Detention is appropriate where a defendant is either a danger to the community or a flight risk; it is not necessary to prove both. *United States v. Kouyoumdjian*, 601 F. Supp. 1506, 1508-10 (C.D. Cal. 1985) (describing legislative history of the Bail Reform Act).  The Ninth Circuit has held that an analysis of whether a defendant poses a "danger may, at least in some cases, encompass pecuniary or economic harm." *United States v. Reynolds*, 956 F.2d 192, 192-93 (9th Cir. 1992); *see United States v. Cohen*, 2010 WL 5387757 (N.D.C.A.) (Judge Susan Illston) (defendant "presents a risk to the community.  Financial harm can constitute community danger, where there is a showing that defendant's fraudulent activity is on-going or defendant has a propensity to continue fraudulent activity"); *United States v. Torres*, 2009 WL 2160581 (N.D.C.A) (Magistrate Judge Vadas) ("In assessing danger, physical violence is not the only form of danger contemplated by the statute. Danger to the community can . . . encompass pecuniary or economic harm"); *United States v. Parodi*, 2008 WL 683421 (N.D.CA.) (Magistrate Judge Joseph C. Spero) (same).

2

1    Other districts have likewise held that danger to the community encompasses financial harm.

2    *See, e.g., United States v. Jinwright*, 2010 WL 2926084 (W.D.N.C. 2010) (although the defendant

3    apparently was not a flight risk, he posed a risk to the economic safety of the community, particularly

4    because his crimes involved manipulating the financial operations of the church where he worked

5    as a senior pastor); *United States v. Norman*, 2009 WL 464078 (S.D.Fla.)*3 ("Defendant's instant

6    violations, including allegedly violating the law by committing similar acts to those underlying the

7    conviction for which he is serving supervised release, speak to the Defendant's fundamental lack of

8    respect for the rule of law"); *United States v. Kimoto*, 2008 WL 4516315 (S.D.Ill.) (defendant

9    presented an economic danger to the community because the offenses for which defendant had been

10   convicted were not the first time that he had engaged in fraudulent activity); *United States v.*

11   *Morgan*, 2008 WL 2705069 (D.Utah) (defendant was an ongoing danger to the community from an

12   economic perspective); *United States v. Moss*, 522 F.Supp. 1033, 1035 (E.D.Pa. 1981) ("it is

13   generally agreed, of course, that a court may refuse bail on the ground that a defendant poses a threat

14   to the community even though the threat is pecuniary rather than physical"); *United States v.*

15   *Miranda*, 442 F.Supp. 786, 792 (S.D. Fla. 1977) ("First, it is beyond dispute that the criterion of

16   'danger to the community,' which is an explicit component of the Bail Reform Act, is not limited

17   to the potential for doing physical harm").

18   **III.    DEFENDANT IS A DANGER TO THE COMMUNITY**

19   On January 5, 2011, pursuant to a writ, defendant was produced from federal prison for the

20   initial appearance on the 114-count indictment under CR 10-00524 DLJ (Attachment B).  At the

21   detention hearing on January 14, 2011, the United States Attorney argued for defendant's continued

22   detention based upon the factors set forth in 18 U.S.C. § 3142(g).  The Ninth Circuit has identified

23   the relevant statutory factors in determining whether pretrial detention is appropriate: (1) the nature

24   and circumstances of the offense charged, including whether the offense is a crime of violence; (2)

25   the weight of the evidence against defendant; (3) the defendant's character, physical and mental

26   condition, family and community ties, financial resources, past conduct, history relating to drug or

27   alcohol abuse, criminal history, and record concerning appearance at court proceedings; and (4) the

28   nature and seriousness of the danger to any person or to the community that would be posed by the

defendant's release.  18 U.S.C. § 3142(g); *United States v. Winsor*, 785 F.2d 755 (9th Cir. 1986).

3

## A.    **Defendant's Prior Criminal History**

| Item No. | Date of Arrest | Charges | Convictions | Sentence | Felony/ Misd | Federal/ State |
|---|---|---|---|---|---|---|
| 1 | 6/30/96 | Force/Assault with Deadly Weapon (not firearm); Great Bodily Injury Likely | Released/Detention Only | | | |
| 2 | 4/19/97 | | 9/3/97: Convicted of two counts of Theft by Use of Access Card Data | 120 days jail, 48 months probation, $22,624.12 restitution | Felonies | State |
| 3 | 1/19/97 | | 2/3/99: Fraud to Obtain Aid | 60 days jail, 2 years probation, and $9,195.00 restitution | Felony | State |
| 4 | 2/11/99 | Forgery | | | | |
| 5 | | Mail Fraud (15 counts)  CR02-40170 DLJ | Mail Fraud 18 U.S.C. § 1341 | 8/27/04: 18 months prison (concurrent with 30-month prison term under CR03-40165 DLJ | Felony | Federal |
| 6 | 7/31/03 | Fraud and Related Activity in Connection with Access Devices (4 counts)  CR03-40165 DLJ | Fraud and Related Activity in Connection with Access Devices  18 U.S.C. § 1029(a)(5) | 8/27/04: 30 months prison (concurrent with 180month prison term under CR02-40170 DLJ) | Felony | Federal |
| 7 | | Fraud and Related Activity in Connection with Access Devices  CR04-40051 DLJ | Fraud and Related Activity in Connection with Access Devices  18 U.S.C. § 1029(a)(5) | 8/27/04: 8 months prison (consecutive to the prison terms imposed under docket nos. CR02-40170 DLJ and CR03-40165 DLJ) | Felony | Federal |
| 8 | 12/21/08 | Driving Under Influence (while on federal supervised release) | Driving Under Influence (0.08%) | 5/18/09:  2 days jail, 36 months court probation, fine, restitution, DWI School | Misd | State |
| 9 | | Supervised Release Violation Petition | Admission to All Charges | 5 months prison | | Federal |

4

| | | | | | | |
|---|---|---|---|---|---|---|
| | | (filed on 1/5/09, as amended on 1/28/09) CR 02-40170 DLJ | Arrest for DUI on 12/21/08; failure to notify probation officer of arrest; failure to pay restitution; failure to be truthful to probation officer regarding place of employment; failure to report change of employment; violating condition that she not be in a position of fiduciary capacity or be employed in a position where she has access to financial and/or personal information | | | |
| 10 | | Supervised Release Violation Petition (filed on 1/5/09, as amended on 1/28/09) CR 03-40165 DLJ | Admission to All Charges (same as no. 8 above) | 5 months prison (4 consecutive to CR 02-40170 DLJ) | | Federal |
| 11 | | Supervised Release Violation Petition (filed on 1/5/09, as amended on 1/28/09) CR 04-40051 DLJ | Admission to all Charges | 5 months prison | | Federal |
| 12 | 5/20/09 | Burglary in the Second Degree Theft by Forged/Invalid Access Card Next Court Date: 3/2/11 | Pending: Next Court Date on 3/2/11 | | | State |
| 13 | | 114-count indictment charging Bank Fraud, Access Device Fraud, and Aggravated Identity Theft | Pending: Writ to produce defendant in magistrate court on 1/5/11 | | | Federal |

| | | CR10-00524 DLJ<br>(Filed on 7/8/10) | Defendant was<br>released from<br>federal prison on<br>2/2/11 | | |

On February 27, 2004, Cherryl Ferguson entered guilty pleas to consecutive, unrelated indictments under CR02-40170 DLJ [Mail Fraud] and CR03-40165 DLJ [Fraud and Related Activity in Connection with Access Devices]. In the first case, defendant devised a scheme to defraud Gap.com of $31,660.58 from approximately November 17, 1999 to December 10, 2001. While on pre-trial release on the first case, defendant continued her criminal fraudulent activities from approximately December 31, 2002 to June 29, 2003, which resulted in the second indictment. In the second case, defendant and co-defendants Davina Renee Countee and Sabrina Hall defrauded various department stores, including Macy's, of merchandise through the use of stolen credit card account numbers.

While on pre-trial release on the first and second cases, defendant continued her criminal fraudulent activities, which resulted in the third indictment under CR04-40051 DLJ. Defendant used an unauthorized access device to steal $1,770.00 from her employer Dr. Tara S., an ophthalmologist, and was charged with Fraud and Related Activity in Connection with Access Devices, in violation of 18 U.S.C. § 1029(a)(5). On March 19, 2004, Ferguson entered a guilty plea under CR04-40051 DLJ. On August 27, 2004, defendant was sentenced to prison on all three cases.

B.    Evidence of Continued Fraud is Overwhelming

Despite her numerous prior state and federal convictions for fraud, defendant has continued to engage in criminal fraudulent activities. Defendant committed fraud before she was even released from federal prison under docket nos. CR 02-40170 DLJ, CR 03-40165 DLJ, and CR 04-40051 DLJ. Prior to defendant's expected release date from federal prison on or about January 31, 2006, the evidence shows that defendant, while in a halfway house, continued to engage in fraud. From on or about December 30, 2005 through on or about November 22, 2006, defendant issued at least thirty-six San Francisco Federal Credit Union checks, totaling approximately $4,478.09, to various

6

1   merchants and businesses, knowing that her account was closed.  Included with those checks were

2   six checks used to purchase merchandise at Costco stores in the Northern District of California from

3   on or about October 27, 2006 to on or about November 4, 2006 with a Costco membership

4   fraudulently opened in the name of victim Cheryl B. and using her California driver's license

5   number.  A description of the thirty-six fraudulent checks are set forth in a chart provided to the

6   magistrate judge.

7          While on federal supervised release, defendant was arrested for Driving Under the Influence

8   of Alcohol for which she was convicted on May 18, 2009.  Two days later on May 20, 2009,

9   defendant was arrested by the Milpitas Police Department based upon an incident at Neiman Marcus

10   on October 29, 2008 when defendant used store credit card accounts containing the personal

11   information of two separate victims to purchase $8,428.83 worth of merchandise.[1]   As discussed

12   below, a search warrant was executed at defendant's residence only a few months earlier on January

13   14, 2009 and, as defendant readily admits, she was well "aware of the government's intention to

14   indict her on the new conduct" (Defendant's Appeal, p. 8). Nevertheless, defendant continued her

15   victimization of innocent people.  Indeed, defendant failed to disclose her May 20th arrest when she

16   appeared before this Court on March 5, 2010 for sentencing on the three supervised release petitions.

17   Based upon the Pre-trial Services Report, defendant has a state court date of March 2, 2011 on those

18   pending fraud charges.

19          Again, while on supervised release, defendant continued to engage in a pattern of criminal

20   activities involving identity theft and the use of her victims' personal and financial information to

21   open credit card accounts and to make fraudulent purchases, which resulted in the current 114-count

22   indictment. Defendant used the personal identification information of her victims, without their

23   knowledge or consent, to obtain credit from various federally insured financial institutions for the

24   purpose of defrauding those financial institutions, the individual victims whose identity information

25   was used to acquire the credit, and the merchants or other businesses from which defendant

26   

27          [1] A copy of the Milpitas police report will be submitted under seal. The government

28   provided a copy of this report to the Assistant Federal Public Defender on February 4, 2011. The
     victim spreadsheets provided to the defense lawyer and the magistrate judge during the detention
     hearing will also be submitted under seal.

7

1    purchased or attempted to purchase merchandise or services. As part of her modus operandi,
2    defendant stole the names, dates of birth, social security numbers, and residential addresses of
3    patients, physicians, and others from her various places of employment, including medical offices
4    and universities, where she had access to personal identification information. An investigator with
5    Macy's Inc. (the parent company of Macy's and Bloomingdales) provided evidence of numerous
6    fraudulent accounts opened at Macy's and Bloomingdales with a common thread that the first name
7    of all of the victims is "Cheryl" (or variations thereof) and the driver's license number used on all
8    of those fraudulent accounts is B9503121. Based upon the database of the California Department
9    of Motor Vehicles, driver's license no. B9503121 is assigned to Cherryl Ferguson. The Macy's
10   investigator disclosed that the same Cherryl Ferguson was an employee of Macy's for two months
11   in 1999, and was fired for fraud.

12          On January 14, 2009, a federal search warrant was executed at defendant's residence where
13   numerous items were seized including, but not limited to, (i) a blue tooth answering machine
14   containing a sku no. which matched the sku no. for the blue tooth answering machine indicated on
15   the Macy's bill sent to victim Cheryl McV. (ii) two bed & bags containing a sku. no. which matched
16   the sku. no. for the two bed & bags indicated on the Macy's bill sent to victim Cheryl D.; (iii) several
17   printouts from Macy's containing personal information and account information of victims; (iv)
18   several ID cards that contained different names other than "Cherryl Ferguson" or "Cherryl
19   Worley;"(v) a printout of an altered CA driver's license; (vi) blank payroll checks/card stock; (vii)
20   a Staples account opened under the name of defendant's former employer Dr. Sara R. (without her
21   authorization); and (viii) a computer and a laptop computer which were examined by the Alamada
22   County Sheriff's Office Computer Crime Laboratory. The computers contained the names and other
23   identifiers of victims whose information was used to make fraudulent purchases through "Bill Me
24   Later"and other businesses.

25          The Office of Probation filed three petitions alleging violations of defendant's terms of
26   supervised release based upon various violations, including her arrest for Driving Under the
27   Influence, failure to disclose her employment at Lifelong Medical Care, and working in a position
28   where she has access to other individuals' financial and/or personal information. As alleged in the

8

petitions, and admitted by the defendant, she lied to her probation officer about her place of employment. Defendant was employed by Life Long Medical Center from May 2008 to January 29, 2009 (*see* AUSA Douglas' declaration attached to the government's sentencing memo filed on March 2, 2010 [Attachment C, ¶ 4d]). Consistent with defendant's modus operandi, the manager of Life Long Medical Center informed federal agents that defendant lied on her application for employment, and she failed to disclose her prior convictions (*see* Attachment C). In addition to interviewing the manager, federal agents also spoke to the head of Human Resources for the Life Long Medical Group who stated that the social security number used by defendant on various forms contained in her personnel file did not belong to her (*e.g.*, the New Hire Checklist, State and Federal Withholding forms (W-4s), Life Insurance Forms, and Direct Deposit/Banking forms). The agents identified the social security number (ending with 8413) used by defendant as belonging to Verma V., a 91-year old woman (Attachment D). Thus, while defendant was on supervised release, she was fraudulently using the social security number of an elderly woman on her various employment forms. Also, as set forth in the pre-trial services report, defendant has used five aliases/variations of her true name.

Defendant has proposed as sureties her two co-defendants, Sabrina Hall and Davina Countee, both of whom were also convicted under CR 03-40165 DLJ. The other proposed sureties are defendant's father Lawrence F., and her grandparents, Ruby H. and Less H., all of whom have utterly failed in controlling this defendant.[2] The Pre-Trial Services Office recommended defendant's continued detention. From the Pre-Trial Services Report, it appears as though defendant could not even be truthful to the pre-trial services officer. For example, defendant reported to pre-trial services that she had completed her DUI program called "Second Chance," but a representative from "Second

---

[2] Counts 10 and 14 of the indictment under CR 02-40170 DLJ state that merchandise obtained through defendant's fraud was mailed to Ruby H. at the listed address. Defendant's father Lawrence F. told the pre-trial services officer that he was unsure whether he was willing to assist defendant with bail. Regarding defendant's reference to her three children, as the Office of Probation pointed out, "[n]one of Ms. Ferguson's action speak to the fact that she was concerned for her children. Her conduct has nothing to do with being a mother, and it is most unfortunate that the children will suffer as a result of her selfish behavior" (Office of Probation's Sentencing Recommendation, p. 2 [CR03-40165 DLJ & CR04-40051 DLJ).

1  Chance" advised that defendant had not completed that program (*see* pre-trial services report). The

2  Pre-Trial Services office concluded, *inter alia*, that defendant's continued criminal behavior while

3  on supervision indicates she is not amenable to supervision, and that there are no combination of

4  release conditions that would mitigate defendant's risk of danger to the community.

5      The magistrate judge correctly concluded that a detention hearing was authorized under the

6  Bail Reform Act and that there is a serious risk that defendant will continue to endanger the public

7  and obstruct justice. Defendant's pre-trial detention will protect the public and the judicial process.

8

9  ## CONCLUSION

10      For the reasons set forth above, and in the magistrate's detention order and the pretrial

11  services' report, the United States respectfully submits that the defendant's appeal of the magistrate

12  judge's detention order should be denied.

13

14  Dated: February 18, 2011             Respectfully submitted,

15                          MELINDA HAAG

16                          United States Attorney

17                          DEBORAH R. DOUGLAS

18                          Assistant United States Attorney

19

20

21

22

23

24

25

26

27

28

**ATTACHMENT A**

Detention Order

# FILED

JAN 1 8 2011

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | No. CR-10-00524-DLJ (DMR) |
| Plaintiff, | ) | |
| | ) | DETENTION ORDER |
| v. | ) | |
| | ) | |
| CHERRYL WORLEY aka CHERRYL | ) | |
| FERGUSON, | ) | |
| | ) | |
| Defendant. | ) | |

## I. INTRODUCTION AND BACKGROUND

Defendant Cherryl Worley is charged in an Indictment with violations of 18 U.S.C.

§§ 1344(1) and (2) (bank fraud), 18 U.S.C. §1029(a)(2) (fraud and related activity in connection

with access devices), and 18 U.S.C. § 1028(a)(1) (aggravated identity theft), along with

associated forfeiture allegations. On January 5, 2011, the United States moved for Ms. Worley's

detention and requested a detention hearing under 18 U.S.C. § 3142(f). The Court ordered a full

bail study, and scheduled a detention hearing with the parties' consent for January 14, 2011.

At the January 14, 2011 hearing, defense counsel argued for the first time that the

Government had not established under 18 U.S.C. § 3142(f) that a detention hearing should even

DETENTION ORDER
CR 10-00524-DLJ (DMR)                    1

1   be held. Subsection 3142(f)(1) requires a detention hearing where the defendant is charged with

2   certain kinds of offenses, none of which are present here. Subsection 3142(f)(2) requires a

3   hearing upon the Government's motion, or upon the judicial officer's own motion, in a case that

4   involves either (1) "a serious risk that the person will flee," (*see* 18 U.S.C. § 3142(f)(2)(A)), or

5   (2) "a serious risk that [Defendant] will obstruct or attempt to obstruct justice, or threaten, injure,

6   or intimidate, or attempt to threaten, injure, or intimidate, a prospective witness or juror." *See* 18

7   U.S.C. § 3142(f)(2)(B).

8        The Government did not argue, nor does this Court find that a hearing is required because

9   Ms. Worley presents a serious risk of flight. Thus, the Government's right to a hearing must be

10  justified under the standard set forth in § 3142(f)(2)(B). Defense counsel correctly points out that

11  this standard differs from that which the Court must apply in determining whether Defendant

12  should be released: namely, whether Defendant presents a danger to "safety of any other person

13  and the community." 18 U.S.C. § 3142(e)(1).

14       The Court finds that a detention hearing is warranted because there is a serious risk that

15  Ms. Worley will obstruct or attempt to obstruct justice. 18 U.S.C. § 3142(f)(2)(B). Although

16  one more commonly thinks of destruction of documents or witness tampering as examples of

17  obstruction of justice, more broadly speaking, obstruction of justice involves interference with

18  the prosecution of a case in some way. Ms. Worley's circumstances are somewhat unusual but

19  nevertheless amount to a serious risk of obstruction. The Court finds that her history of prior

20  behavior before this Court, described in more detail below, raises a serious risk that she will

21  attempt to obstruct justice by continuing to engage in illegal and fraudulent activities during the

22  pendency of the current indictment. If she continues to commit fraud while her case is pending,

23  as she repeatedly has done in the past, it will amount to interference with the prosecution. In the

24  past, the efforts to prosecute Ms. Worley multiplied and became more complicated, resulting in

25  three successive indictments rather than one, because she did not stop her illegal activity while

26  out of custody and awaiting trial. For this reason, the Court finds that the Government is entitled

27  to a full detention hearing pursuant to 18 U.S.C. § 3142(f)(2)(B).

28       On January 14, 2011, the Court conducted the bail hearing, during which the parties were

DETENTION ORDER
CR 10-00524-DLJ (DMR)                2

1  given an opportunity to proffer information in support of their positions.  The Court also

2  reviewed the bail study, which recommended that Defendant remain in custody due to the danger

3  that she presents to the community.

4  ## II. LEGAL ANALYSIS UNDER THE BAIL REFORM ACT

5      The Bail Reform Act requires that in a pretrial posture, the Government bears the burden

6  of proving that a defendant poses a risk of flight and/or a danger to the community that cannot be

7  mitigated through the imposition of conditions of release.  If the Government does not meet its

8  burden, the Court's duty is to fashion appropriate conditions that permit the defendant to remain

9  out of custody during the preparation of his or her defense, while safeguarding against flight or

10  community danger.  Close cases should result in release: "[t]o give effect to the principle that

11  doubts regarding the propriety of release be resolved in favor of the defendant, the court is to rule

12  against detention in close cases..." *U.S. v. Chen*, 820 F. Supp. 1205, 1208 (N.D. Cal. 1992)

13  (Walker, J.) (quoting *U.S. v. Motamedi*, 767 F.2d 1403, 1405-06 (9th Cir. 1985)).

14      A person facing trial generally shall be released if some "condition, or combination of

15  conditions ... [can] reasonably assure the appearance of the person as required and the safety of

16  any other person and the community."  18 U.S.C. § 3142(c)(1)(B).  The court must order a

17  defendant detained if the court finds that conditions cannot be fashioned to assure the defendant's

18  appearance in court, or the safety of the community or another person.  18 U.S.C. § 3142(e)(1).

19  The Government bears the burden of proof on either prong.  To prove that no condition or

20  combination of conditions can assure that the accused will appear at required court hearings, the

21  Government must show by a preponderance of the evidence that the accused is a flight risk.

22  *United States v. Aitken*, 898 F.2d 104, 107 (9th Cir. 1990).  The Government must prove that

23  Defendant poses a non-mitigable danger to the community through clear and convincing

24  evidence.  *Motamedi*, 767 F.2d at 1406-1407.

25      Bail hearings generally proceed by proffer, and the rules of evidence do not apply.  18

26  U.S.C. § 3142(f).  At the hearing, the Court determines whether any conditions in section

27  3142(c) will reasonably assure the defendant's appearance and the safety of the community or

28  another person.  *Id.*  The Bail Reform Act "mandates release of a person facing trial under the

DETENTION ORDER
CR 10-00524-DLJ (DMR)                                3

1    least restrictive condition or combination of conditions that will reasonably assure the appearance

2    of the person as required." *Motamedi*, 767 F.2d at 1405.

3          In evaluating whether pretrial release is appropriate, a court must consider (1) the nature

4    and circumstances of the offense, (2) the weight of the evidence, (3) the history and

5    characteristics of the person (including his character, physical and mental condition, family ties,

6    employment, financial resources, length of residence in the community, community ties, past

7    conduct, history relating to drug and alcohol abuse, criminal history, or record concerning

8    appearance at court proceedings), and (4) the nature and seriousness of the danger to any person

9    or the community posed by the person's release.  18 U.S.C. § 3142(g); *Motamedi*, 767 F.2d at

10   1407.

11   **A.    The Nature and Circumstances of the Offense**

12          Ms. Worley is charged with one hundred and fourteen counts of bank fraud, fraud in

13   connection of access devices, and aggravated identity theft.  According to the Government's

14   proffer, Ms. Worley has a history of hiding her criminal record and obtaining jobs that give her

15   access to individual's private information (such as positions in universities and medical offices).

16   Ms. Worley then allegedly misappropriates individuals' identifying information and uses it to

17   engage in fraud for her own gain.

18          The instant offense charges that she engaged in identity theft and fraud from no later than

19   August 2007 through December 2008.  The Government proffered that Ms. Worley engaged in

20   the currently charged illegal activity soon after she was released from Bureau of Prisons custody

21   for which she was serving sentences for three prior identity theft and fraud convictions.

22   **B.    The Weight of the Evidence**

23          The Ninth Circuit has held that in order to guard against the possibility of making a

24   "preliminary determination of guilt" that then leads to punishment in the form of a refusal to

25   grant release, the weight of the evidence is the least important of the various factors.  *Motamedi*,

26   767 F.2d at 1408.  The weight of the evidence against Ms. Worley in this case appears to be

27   strong.  The Government proffered four exhibits purporting to itemize well over 150 individual

28   instances of fraudulent transactions by Ms. Worley.  The Government also proffered that

DETENTION ORDER
CR 10-00524-DLJ (DMR)                              4

1   investigators located merchandise and information in Ms. Worley's home and computer that

2   correspond with SKU numbers and stolen identity information involved in the case.

3       C.    **The History and Characteristics of Defendant and the Nature and**
              **Seriousness of the Danger to Any Person or the Community**

4

5       Ms. Worley is thirty-six years old and has lived in the Bay Area her entire life.  She

6   currently is incarcerated in the Federal Detention Center, where she is serving a sentence for a

7   supervised release violation; she is due to be released on February 5, 2011.  Ms. Worley has three

8   children, all of whom live in the East Bay.  Her two younger children, ages 9 and 13, live with

9   their father.  Her older daughter, age 17, lives with that daughter's paternal grandmother.  Ms.

10  Worley received a GED and attended some community college classes.  With respect to her

11  health, Ms. Worley has hypertension, alopecia, and anemia.

12      Ms. Worley's state criminal history began in 1997 with two felony convictions for access

13  card theft.  She sustained an additional felony in 1997 for fraud to obtain aid.  She was arrested in

14  1999 for forgery.  She sustained a misdemeanor DUI conviction in December 2008.  The bail

15  study also shows a May 2009 arrest for second degree burglary and theft by forged or invalid

16  access card.  Neither the Government nor defense proffered further information about this event;

17  the bail study indicates a March 2, 2011 future court date associated with this incident.

18      With respect to her federal criminal history, she first appeared before a magistrate judge

19  in 2002 on an arrest for mail fraud.  She was granted pretrial release.  Ms. Worley perpetrated

20  fraud while on pretrial release, which resulted in a second indictment.  Ms. Worley was again

21  released on bond by the magistrate judge.  Both the first and second release order were revoked

22  in February 2004 due to continuing illegal behavior.  While on release during the first and second

23  case, Ms. Worley was indicted a third time for new fraudulent activity.  Ms. Worley eventually

24  pleaded guilty to counts in all three indictments, and served sentences on all three.  Her

25  supervised release term commenced on January 31, 2006.  As noted above, the Government

26  proffered that soon after she was released from prison, she engaged in the fraud that has led to

27  this fourth indictment.

28      In January 2009, U.S. Probation filed three separate Form 12 petitions charging her with

1  violations of her supervised release based upon her DUI arrest, failure to timely report the arrest,

2  failure to pay restitution as ordered, failure to submit truthful and complete written reports,

3  failure to timely notify her probation officer of a change in employment, and violation of the

4  special condition that she not be in a fiduciary capacity or be employed in a position where she

5  has access to financial and/or personal information without prior approval. This last violation is

6  particularly troubling from the perspective of a Bail Reform Act analysis, given its close

7  connection to Defendant's ability to perpetrate acts of identity theft.

8        Ms. Worley admitted to the supervised release violations in January 2010, and self-

9  surrendered for her sentence in May 2010.

10        Defense counsel proffered that Ms. Worley's oldest daughter's paternal grandparents

11  would be willing to sign a secured bond. They own a home in Richmond; however, the home

12  currently has a market value that is less than the amount of their mortgage.

13        **D.     Conclusion**

14        The Court finds that Ms. Worley does not present a serious risk of flight that cannot be

15  mitigated with conditions of release. However, the Court also finds that the Government has

16  demonstrated by clear and convincing evidence that Ms. Worley presents a danger to the safety

17  of other persons and the community.

18        Ms. Worley repeatedly has demonstrated that she cannot stop herself from engaging in

19  serious and widespread identity theft while on court supervision. Her pattern of behavior

20  presents a serious risk of economic danger to the community. Although identity theft does not

21  involve physical violence, it can nevertheless create havoc and result in great harm to its victims.

22  *U.S. v. Reynolds*, 956 F.2d 192, 192-193 (9th Cir. 1992) (under Bail Reform Act, danger to

23  community may, in some cases, encompass pecuniary or economic harm). In the presentence

24  reports for Ms. Worley's prior federal fraud convictions, the probation officer notes in the

25  strongest possible terms that a prior period of incarceration, pretrial supervision, and the threat of

26  further custody time have not deterred Defendant in the least from continuing to engage in

27  fraudulent activity.

28        Defendant argues that Ms. Worley has reformed her behavior, and that there is no

DETENTION ORDER
CR 10-00524-DLJ (DMR)                    6

1  evidence of criminal behavior for a window of time in 2009 when she was out of custody.[1]

2  However, this brief window cannot shift the weight of Defendant's significant and long-standing

3  pattern of committing fraud while under successive indictments and also while on community

4  supervision, coupled with the current allegations of fraud committed through 2008. The

5  Government thus has established by clear and convincing evidence that Ms. Worley's release

6  would present a serious risk of danger to the community. Her two prior revocations of pretrial

7  release for continuing fraudulent activity are further indications that conditions of release are not

8  adequate to mitigate the danger she poses.

9         The Court detains Ms. Worley because of a serious risk of danger to the community that

10  cannot be mitigated through conditions of release. Ms. Worley shall remain committed to the

11  custody of the Attorney General.

12         IT IS SO ORDERED.

13

14

15  DATED: January 18, 2011

DONNA M. RYU
16                                      United States Magistrate Judge

17

18

19

20

21

22

23

24

25

26

27    [1]  As noted above, the bail study shows an arrest in May 2009 for second degree burglary and
theft by forged/invalid access card, with an active court date scheduled for March 2, 2011. However,
28  neither party was able to provide any additional information about this arrest.

DETENTION ORDER
CR 10-00524-DLJ (DMR)                    7

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**ATTACHMENT B**

Indictment (filed on July 8, 2010)

JOSEPH P. RUSSONIELLO (CABN 44332)
United States Attorney

E-filing

**FILED**

JUL – 8 2010

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

**CR10-00524 DLJ**

| | |
|---|---|
| UNITED STATES OF AMERICA, | Criminal No. |
| Plaintiff, | VIOLATIONS:18 U.S.C. § 1344(1) and (2) [Bank Fraud] (19 counts); 18 U.S.C. § 1029(a)(2) [Fraud and Related Activity in Connection with Access Devices](47 counts); 18 U.S.C. § 1028A(a)(1)[Aggravated Identity Theft] (48 counts); 18 U.S.C. §§ 982 & 1029 and 21 U.S.C. § 853 [Criminal Forfeiture] |
| v. | |
| CHERRYL WORLEY, a/k/a Cherryl Ferguson, | |
| Defendant. | |
| | OAKLAND VENUE |

INDICTMENT

The Grand Jury charges:

Introduction

At all times relevant to this indictment:

1.      Defendant Cherryl Worley ("defendant") was a resident of Oakland, California.

2.      "Bill Me Later" was a payment method offered by thousands of merchants, including many well-known stores, airlines, and hotels, and permits purchases to be made online without the use of a credit card. "Bill Me Later" was operated by a company based in Timonium, Maryland, and offered credit through CIT Bank, a federally insured financial institution in Salt Lake City, Utah. To make purchases through the "Bill Me Later" website, the customer applied online and provided his or her full name, date of birth, last four digits of social security number, telephone

INDICTMENT

number, and e-mail address. CIT Bank reviewed and considered the customer's credit report and other credit-related information. If the customer's application was approved, CIT Bank extended credit for each transaction and assigned an account number to that transaction. The customer paid the bill by mail (via check) or online (via bank account) through the "Bill Me Later" website. The internet servers for "Bill Me Later" were located in Nebraska and Maryland.

3.     CareCredit was a credit card issued by GE Money Bank, a federally insured financial institution headquartered in Connecticut, which extended credit for the payment of healthcare treatments and procedures. GE Money Bank approved or denied credit card applications based upon information contained on the applications and past credit history. When a medical office received an application from a patient for a CareCredit card, that office provided the patient's information as contained on the application (name, date of birth, social security number, etc.) to the CareCredit office in Tempe, Arizona, either by telephone or via the Internet.

<u>The Schemes to Defraud</u>

4.     Beginning at a time unknown to the Grand Jury, but no later than in or about August 2007, and continuing to in or about December 2008, defendant did knowingly devise and execute material schemes and artifices to defraud various federally insured financial institutions, and to obtain moneys, funds, credits, assets, securities, and other property owned by, and under the custody and control of, those financial institutions, by means of material false and fraudulent pretenses, representations, promises, and omissions of material facts. For the purpose of executing such material schemes and artifices to defraud, defendant did knowingly transfer, possess, and use, without lawful authority, a means of identification of other persons, including their names, dates of birth, and social security numbers (or last four digits of social security numbers).

5.     More specifically, defendant stole the names, dates of birth, social security numbers, and residential addresses of patients, physicians, and others from her various places of employment and elsewhere, including medical offices, where she had access to personal identification information. Defendant targeted victims primarily with the first name of "Cheryl" or similar names such as "Cherient," "Sherry," "Shelia," and "Shelley." Defendant then used the personal identification information of her victims, without their knowledge or consent, to obtain credit from various financial institutions insured by the Federal Deposit Insurance Corporation, including CIT

INDICTMENT                    2

Bank and GE Money Bank, for the purpose of defrauding those financial institutions, the individual victims whose identity information was used to acquire the credit, and the merchants or other businesses from which defendant purchased or attempted to purchase merchandise or services.

6.    Through credit obtained by the unauthorized use of her victims' personal identification information, defendant knowingly, and with intent to defraud, purchased numerous items of value, in and effecting interstate commerce.

COUNT ONE (18 U.S.C. § 1344(1) & (2) - Bank Fraud)

7.    The factual allegations contained in paragraphs one and three through six are realleged and incorporated by reference as though fully set forth herein.

8.    Beginning at a time unknown to the Grand Jury, but no later than on or about August 10, 2007, in the Northern District of California and elsewhere, the defendant,

CHERRYL WORLEY,
a/k/a  Cherryl Ferguson,

did knowingly devise and execute a material scheme and artifice to defraud the GE Money Bank, federally insured by the Federal Deposit Insurance Corporation, and to obtain moneys, funds, credits, assets, securities, and other property owned by, and under the custody and control of, that financial institution, by means of material false and fraudulent pretenses, representations, and promises: namely, defendant obtained and used the name, date of birth, and social security number of her victim Cheryl Ste., without lawful authority, to apply for and obtain CareCredit card no. xxxxxxxxxxxx2792 issued by the GE Money Bank and then used that credit card for an unauthorized purchase in the amount of $4,000.00, in violation of Title 18, United States Code, Section 1344(1) & (2).

INDICTMENT                                   3

COUNTS TWO THROUGH NINETEEN (18 U.S.C. § 1344(1) & (2) - Bank Fraud)

9. The factual allegations contained in paragraphs one, two, and four through six are realleged and incorporated by reference as though fully set forth herein.

10. Beginning at a time unknown to the Grand Jury, but no later than on or about the dates listed below, in the Northern District of California and elsewhere, the defendant,

CHERRYL WORLEY,<br>a/k/a Cherryl Ferguson,

did knowingly devise and execute, and attempt to execute, material schemes and artifices to defraud the CIT Bank, federally insured by the Federal Deposit Insurance Corporation, and to obtain moneys, funds, credits, assets, securities, and other property owned by, and under the custody and control of, that financial institution, by means of material false and fraudulent pretenses, representations, and promises, as set forth below:

| Count | Date | Victim | "Bill Me Later" Account No. (last four digits) | Actual Transaction | Attempted Transaction |
|-------|------|--------|------------------------------------------------|--------------------|------------------------|
| 2 | 10/26/08 | Adriana Riv. | 7077 | $ 419.24 | |
| 3 | 11/12/08 | Cheryl A.C. | 5719 | $ 861.45 | |
| 4 | 11/13/08 | Cheryl A.C. | 5853 | | $ 536.06 |
| 5 | 11/13/08 | Cheryl A.C. | 5890 | | $ 536.06 |
| 6 | 11/19/08 | Cheryl Hawk. | 8744 | $ 817.96 | |
| 7 | 11/20/08 | Cheryl Hawk. | 4062 | | $ 464.79 |
| 8 | 11/24/08 | Cheryl Har. | 8126 | | $ 615.78 |
| 9 | 11/24/08 | Cheryl Har. | 8640 | | $ 615.78 |
| 10 | 11/25/08 | Cheryl Pit. | 3468 | | $ 376.24 |
| 11 | 11/25/08 | Cheryl Pit. | 3446 | | $ 376.24 |
| 12 | 12/04/08 | Shelley Bar. | 5271 | | $ 989.43 |
| 13 | 12/05/08 | Cheryl Meu. | 0627 | | $ 989.43 |
| 14 | 12/05/08 | Cheryl M-H. | 0345 | | $ 989.43 |
| 15 | 12/08/08 | Cheryl Meu. | 0553 | | $ 796.20 |
| 16 | 12/08/08 | Cheryl Meu. | 0553 | | $ 796.20 |
| 17 | 12/08/08 | Cheryl Meu. | 3075 | $ 989.43 | |
| 18 | 12/08/08 | Cheryl Meu. | 6028 | | $ 504.21 |
| 19 | 12/08/08 | Cheryl Meu. | 1952 | | $ 727.11 |

INDICTMENT                                          4

All in violation of Title 18, United States Code, Section 1344(1) & (2).

<u>COUNTS TWENTY THROUGH SIXTY-SIX</u> (18 U.S.C. § 1029(a)(2)- Fraud and Related
Activity in Connection with Access Devices)

11.   The factual allegations contained in paragraphs one, two, and four through six are
realleged and incorporated by reference as though fully set forth herein.

12.   On or about the dates specified below, in the Northern District of California and
elsewhere, the defendant,

CHERRYL WORLEY,
a/k/a Cherryl Ferguson,

did knowingly, and with intent to defraud, attempted to traffic in and did traffic in and use one or
more unauthorized access devices during a one-year period to obtain things of value aggregating
$1,000 or more during that period, in and affecting interstate commerce, as set forth below:

| Count | Date | Victim | "Bill Me Later" Account No. (last four digits) | Actual Transaction | Attempted Transaction |
|---|---|---|---|---|---|
| 20 | 9/02/08 | Cheryl Wil. | 5282 | $3,710.70 | |
| 21 | 9/04/08 | Cheryl Wil. | 7961 | | $2,128.39 |
| 22 | 9/04/08 | Cheryl Wil. | 7961 | | $1,388.89 |
| 23 | 10/26/08 | Christine Ben. | 7070 | | $1,910.89 |
| 24 | 10/26/08 | Cheryl Car. | 7070 | | $2,200.73 |
| 25 | 10/26/08 | Cheryl Car. | 7070 | | $1,892.89 |
| 26 | 10/26/08 | Adriana Riv. | 7077 | | $1,122.87 |
| 27 | 10/26/08 | Adriana Riv. | 7060 | | $1,517.98 |
| 28 | 10/26/08 | Adriana Riv. | 7060 | | $2,329.86 |
| 29 | 10/26/08 | Adriana Riv. | 7053 | $1,970.86 | |
| 30 | 10/27/08 | Adriana Riv. | 7081 | | $1,424.93 |
| 31 | 10/27/08 | Adriana Riv. | 7081 | | $1,424.93 |
| 32 | 11/01/08 | Erica Ped. | 7070 | | $2,200.73 |
| 33 | 11/12/08 | Cheryl A.C. | 5716 | $2,122.96 | |
| 34 | 11/12/08 | Cheryl A.C. | 5719 | | $1,448.70 |
| 35 | 11/12/08 | Cheryl A.C. | 5719 | | $1,448.70 |
| 36 | 11/23/08 | Cheryl Hau. | 4155 | | $2,405.71 |
| 37 | 11/23/08 | Cheryl Hau. | 4155 | | $2,214.95 |

INDICTMENT                                    5

| Count | Date | Victim | "Bill Me Later" Account No. (last four digits) | Actual Transaction | Attempted Transaction |
|-------|------|--------|-----------------|-------------------|----------------------|
| 38 | 11/25/08 | Cheryl Pit. | 6447 | $1,043.64 | |
| 39 | 11/25/08 | Cheryl Pit. | 4072 | $2,529.08 | |
| 40 | 11/25/08 | Cheryl Pit. | 4066 | $2,476.39 | |
| 41 | 11/26/08 | Cheryl For. | 3293 | | $1,746.46 |
| 42 | 11/26/08 | Cheryl Pow. | 3499 | | $1,746.46 |
| 43 | 11/26/08 | Cheryl The. | 3891 | | $1,746.46 |
| 44 | 11/26/08 | Cheryl The. | 3879 | | $1,746.46 |
| 45 | 11/26/08 | Cheryl The. | 3863 | | $1,746.46 |
| 46 | 11/26/08 | Cheryl The. | 3821 | | $1,746.46 |
| 47 | 11/26/08 | Cheryl The. | 3711 | | $1,746.46 |
| 48 | 11/27/08 | Cheryl Coh. | 7860 | | $1,746.46 |
| 49 | 11/27/08 | Cheryl Har. | 8346 | | $1,746.46 |
| 50 | 11/27/08 | Cheryl T.H. | 6941 | | $1,746.46 |
| 51 | 11/30/08 | Cheryl Har. | 7797 | | $1,365.67 |
| 52 | 11/30/08 | Cheryl Hawk. | 8739 | | $1,365.67 |
| 53 | 11/30/08 | Cheryl Pac. | 8997 | | $1,348.76 |
| 54 | 11/30/08 | Cheryl Pac. | 6029 | | $1,902.37 |
| 55 | 11/30/08 | Cheryl Pac. | 6029 | | $1,902.37 |
| 56 | 12/04/08 | Shelley Bar. | 9156 | | $1,435.23 |
| 57 | 12/04/08 | Cheryl Hawt. | 8649 | | $1,435.23 |
| 58 | 12/04/08 | Shelia Jac. | 4967 | | $1,435.23 |
| 59 | 12/04/08 | Shelia Jac. | 4736 | | $1,435.23 |
| 60 | 12/04/08 | Cheryl Pan. | 3297 | | $1,416.08 |
| 61 | 12/04/08 | Sherry Wil. | 3931 | | $1,435.23 |
| 62 | 12/04/08 | Sherry Wil. | 3773 | | $1,435.23 |
| 63 | 12/05/08 | Cheryl M-H. | 9863 | | $1,435.23 |
| 64 | 12/08/08 | Cheryl Meu. | 0255 | $1,784.14 | |
| 65 | 12/17/08 | Cherient Gel. | 2984 | | $1,398.08 |
| 66 | 12/17/08 | Cherient Gel. | 2984 | | $2,779.21 |

All in violation of Title 18, United States Code, Section 1029(a)(2).

INDICTMENT                                        6

COUNT SIXTY-SEVEN (18 U.S.C. § 1028A(a)(1)- Aggravated Identity Theft)

13. The factual allegations contained in paragraphs one and three through six are realleged and incorporated by reference as though fully set forth herein.

14. On or about August 10, 2007, in the Northern District of California and elsewhere, the defendant,

CHERRYL WORLEY,
a/k/a Cherryl Ferguson,

did knowingly transfer, possess, and use, without lawful authority, a means of identification of another person, as defined in 18 U.S.C. § 1028(d)(7)(A), during and in relation to a felony violation of 18 U.S.C. §1344(1) & (2) as alleged in count one above.

All in violation of Title 18, United States Code, Section 1028A(a)(1).

COUNTS SIXTY-EIGHT THROUGH ONE HUNDRED FOURTEEN (18 U.S.C. § 1028A(a)(1)-Aggravated Identity Theft)

15. The factual allegations contained in paragraphs one, two, and four through six are realleged and incorporated by reference as though fully set forth herein.

16. On or about the dates specified below, in the Northern District of California and elsewhere, the defendant,

CHERRYL WORLEY,
a/k/a Cherryl Ferguson,

did knowingly transfer, possess, and use, without lawful authority, a means of identification of another person, as defined in 18 U.S.C. § 1028(d)(7)(A), during and in relation to a felony violation of 18 U.S.C. §1029(a)(2) as alleged in the counts listed below:

| Count | Date | Victim | Referenced Access Device Fraud Count |
|-------|------|--------|--------------------------------------|
| 68 | 9/02/08 | Cheryl Wil. | 20 |
| 69 | 9/04/08 | Cheryl Wil. | 21 |
| 70 | 9/04/08 | Cheryl Wil. | 22 |
| 71 | 10/26/08 | Christine Ben. | 23 |
| 72 | 10/26/08 | Cheryl Car. | 24 |
| 73 | 10/26/08 | Cheryl Car. | 25 |
| 74 | 10/26/08 | Adriana Riv. | 26 |
| 75 | 10/26/08 | Adriana Riv. | 27 |
| 76 | 10/26/08 | Adriana Riv. | 28 |

INDICTMENT                                    7

| Count | Date | Victim | Referenced Access Device Fraud Count |
|-------|------|--------|--------------------------------------|
| 77 | 10/26/08 | Adriana Riv. | 29 |
| 78 | 10/27/08 | Adriana Riv. | 30 |
| 79 | 10/27/08 | Adriana Riv. | 31 |
| 80 | 11/01/08 | Erica Ped. | 32 |
| 81 | 11/12/08 | Cheryl A.C. | 33 |
| 82 | 11/12/08 | Cheryl A.C. | 34 |
| 83 | 11/12/08 | Cheryl A.C. | 35 |
| 84 | 11/23/08 | Cheryl Hau. | 36 |
| 85 | 11/23/08 | Cheryl Hau. | 37 |
| 86 | 11/25/08 | Cheryl Pit. | 38 |
| 87 | 11/25/08 | Cheryl Pit. | 39 |
| 88 | 11/25/08 | Cheryl Pit. | 40 |
| 89 | 11/26/08 | Cheryl For. | 41 |
| 90 | 11/26/08 | Cheryl Pow. | 42 |
| 91 | 11/26/08 | Cheryl The. | 43 |
| 92 | 11/26/08 | Cheryl The. | 44 |
| 93 | 11/26/08 | Cheryl The. | 45 |
| 94 | 11/26/08 | Cheryl The. | 46 |
| 95 | 11/26/08 | Cheryl The. | 47 |
| 96 | 11/27/08 | Cheryl Coh. | 48 |
| 97 | 11/27/08 | Cheryl Har. | 49 |
| 98 | 11/27/08 | Cheryl T.H. | 50 |
| 99 | 11/30/08 | Cheryl Har. | 51 |
| 100 | 11/30/08 | Cheryl Hawk. | 52 |
| 101 | 11/30/08 | Cheryl Pac. | 53 |
| 102 | 11/30/08 | Cheryl Pac. | 54 |
| 103 | 11/30/08 | Cheryl Pac. | 55 |
| 104 | 12/04/08 | Shelley Bar. | 56 |
| 105 | 12/04/08 | Cheryl Hawt. | 57 |
| 106 | 12/04/08 | Shelia Jac. | 58 |
| 107 | 12/04/08 | Shelia Jac. | 59 |

INDICTMENT                                  8

| Count | Date | Victim | Referenced Access Device Fraud Count |
|-------|------|--------|--------------------------------------|
| 108 | 12/04/08 | Cheryl Pan. | 60 |
| 109 | 12/04/08 | Sherry Wil. | 61 |
| 110 | 12/04/08 | Sherry Wil. | 62 |
| 111 | 12/05/08 | Cheryl M-H. | 63 |
| 112 | 12/08/08 | Cheryl Meu. | 64 |
| 113 | 12/17/08 | Cherient Gel. | 65 |
| 114 | 12/17/08 | Cherient Gel. | 66 |

All in violation of Title 18, United States Code, Section 1028A(a)(1).

**FIRST FORFEITURE ALLEGATION**: Bank Fraud Forfeiture
(18 U.S.C. § 982, 21 U.S.C. § 853)

17.    The allegations of Counts One through Nineteen of this Indictment are realleged and incorporated herein.

18.    Upon conviction of the offenses alleged in Counts One through Nineteen above, the defendant,

CHERRYL WORLEY,
a/k/a Cherryl Ferguson,

shall forfeit to the United States all property real or personal which constitutes or is derived from any proceeds the defendant obtained, directly or indirectly from said offenses, pursuant to Title 18, United States Code, Section 982(a)(2)(A).

If any of said property, as a result of any act or omission of the defendant –

(1) cannot be located upon the exercise of due diligence;

(2) has been transferred or sold to or deposited with, a third person;

(3) has been placed beyond the jurisdiction of the Court;

(4) has been substantially diminished in value; or

(5) has been commingled with other property which cannot be divided without difficulty;

any and all interest the defendant has in other property shall be vested in the United States and forfeited to the United States pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b)(1) and Title 28, United States Code, Section 2461(c).

INDICTMENT                                    9

All pursuant to Title 18, United States Code, Section 982(a)(2)(A), and Title 28, United States Code, Section 2461(c).

**SECOND FORFEITURE ALLEGATION**: Access Device Fraud Forfeiture(18 U.S.C. §§ 982 and 1029, 21 U.S.C. § 853)

19.     The allegations of Counts Twenty to Sixty-Six of this Indictment are realleged and incorporated herein.

20.     Upon conviction of the offenses alleged in Counts Twenty to Sixty-Six above, the defendant,

CHERRYL WORLEY,
a/k/a Cherryl Ferguson,

shall forfeit to the United States:

(A) pursuant to Title 18, United States Code, Section 982(a)(2)(B), any property constituting, or derived from, proceeds obtained, directly or indirectly, as a result of such violation(s);

(B) pursuant to Title 18, United States Code, Section 1029(c)(1)(C), any personal property used or intended to be used to commit the offense(s).

The property to be forfeited includes, but is not limited to:

- One Compaq Presario Computer, serial no. MXK3280C24
- One Compaq Presario Laptop Computer, serial no. CND6341GP8

If any of said property, as a result of any act or omission of the defendant –

(1) cannot be located upon the exercise of due diligence;

(2) has been transferred or sold to or deposited with, a third person;

(3) has been placed beyond the jurisdiction of the Court;

(4) has been substantially diminished in value; or

(5) has been commingled with other property which cannot be divided without difficulty; any and all interest the defendant has in other property shall be vested in the United States and forfeited to the United States pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Sections 982(b)(1) and 1029(c)(2) and Title 28, United States Code, Section 2461(c).

INDICTMENT                                10

All pursuant to Title 18, United States Code, Section 982(a)(2)(B), Title 18, United States Code, Section 1029(c)(1)(C), and Title 28, United States Code, Section 2461(c).

DATED: July 8, 2010                                    A TRUE BILL.

                                                      FOREPERSON

JOSEPH P. RUSSONIELLO
United States Attorney

BRIAN J. STRETCH
Chief, Criminal Division

(Approved as to form:  _____)
                        Deborah R. Douglas
                        Assistant United States Attorney

**ATTACHMENT C**

AUSA Deborah Douglas' Declaration dated March 2, 2010 filed with
Government's Sentencing Memorandum

DECLARATION

I, DEBORAH R. DOUGLAS, declare as follows:

1.      I have been an Assistant United States Attorney in the Northern District of California since December 2002. I was the prosecutor in *United States v. Cherryl Ferguson* under docket nos. CR 02-40170 DLJ, CR 03-40165 DLJ, and CR 04-40051 DLJ, and represent the United States in the supervised release violation petitions under those docket numbers. I am also the prosecutor in the pending investigation against the defendant for additional violations of federal criminal law. The facts set forth in this declaration are based upon information conveyed to me by law enforcement agents and my review of various reports and other documents.

2.      While defendant Cherryl Ferguson was on supervised release under the above docket numbers, the Bay Area Identity Theft ("BAIT") Task Force located in Oakland, California, conducted an investigation of numerous acts of fraud by the defendant. The BAIT Task Force consists of representatives from the U.S. Postal Inspection Service, U.S. Secret Service, Oakland Police Department, and San Leandro Police Department. The BAIT Task Force has discovered overwhelming evidence that defendant, while on federal supervised release, has continued to engage in a pattern of criminal activities involving identity theft and the use of her victims' personal and financial information to open credit card accounts and to make purchases. The BAIT Task Force's investigation includes, but is not limited to, interviews with victims, witnesses, and defendant's former employers; documentary evidence; and investigations by Department Stores. There are numerous victims and substantial loss involved in defendant's various fraudulent schemes while on supervised release, which commenced on or about January 31, 2006.

3.      Defendant's modus operandi appears to be targeting victims, primarily with the first name "Cherryl," "Cheryl," "Sheryl," "Sherry," "Sherrell," or variations thereof. For example, there are at least sixteen fraudulent accounts (eight from Macy's and eight from Bloomindale's) with a common thread that the first name of all of the victims is "Cheryl," "Cherryl," or "Sheryl" and that the driver's license number used on all sixteen accounts is B9503121. The evidence that defendant opened those fraudulent accounts includes, but is not limited to, the assignment of driver's license no. B9503121 to defendant Cherryl Ferguson by the California Department of Motor Vehicles. The

i

1   Macy's investigator disclosed that the same Cherryl Ferguson was an employee of Macy's for two
2   months in 1999, and was fired for fraud.

3       4.    Defendant's modus operandi also appears to be seeking employment at physician's
4   offices where she has the opportunity to steal the identity information of the physicians, patients or
5   others to open fraudulent credit card accounts. Listed below are a few examples:

6       a.    Defendant, using the name Cherryl Worley, was fired from the Allergy and
7   Asthma Medical Group, Walnut Creek, on November 29, 2006, after the identity information of a
8   patient was stolen from the Medical Group and used to make fraudulent transactions in Sacramento.
9   Other identity theft victims were identified as patients at the Allergy and Asthma Medical Group.
10  Defendant admitted to a Walnut Creek police officer that she had lied to her employer in the
11  application process because she needed a job.

12      b.    Another identity theft victim was a patient in the office of a surgeon in San
13  Leandro, where defendant, using the name Cherryl Worley, was employed from March 19, 2007 to
14  August 27, 2007 when she was fired for mail theft. Defendant had been in charge of opening all
15  incoming mail. The surgeon told BAIT Task Force members that defendant stole three incoming
16  checks made out to the surgeon from Medicare, Blue Cross, and the State of California. Defendant
17  attempted to deposit or cash the checks at her credit union. In August 2008, the credit union called
18  the surgeon asking if defendant had permission to pass the checks. The surgeon told the credit union
19  that defendant did not have her permission. On November 28, 2008, the surgeon was contacted by
20  a Staples Department Store manager regarding an outstanding unpaid balance of $2,187.65 on her
21  Staples credit card. The surgeon stated that she did not open this account. The Staples Department
22  Store manager told the surgeon that the account number was opened by a person using the first name
23  "Cherryl" with an address in Oakland that BAIT Task Force members knew was defendant's
24  residence.

25      c.    On August 10, 2007, defendant used a credit card fraudulently opened in the
26  name of a patient of defendant's former employer, the surgeon in San Leandro, to pay $4,000 of the
27  $9,000 cost for cosmetic surgery performed on defendant by a plastic surgeon whose office was also
28  located in San Leandro. While defendant was undergoing a follow-up medical procedure in the same

ii

1   plastic surgeon's office on February 1, 2008, defendant asked a registered nurse to retrieve

2   defendant's cell phone from her purse. As the nurse retrieved defendant's cell phone, the nurse

3   noticed three different California driver's licenses in defendant's purse. Two of the driver's licenses

4   had defendant's photograph on them, but with different printed names, and the third driver's license

5   had information and photograph of someone other than defendant.

6           d.      From May 2008 to January 29, 2009, defendant was employed at the Life

7   Long Medical Center, which is referenced in the three supervised release violation petitions. The

8   manager of the Life Long Medical Center informed BAIT Task Force members that defendant had

9   lied on her application for employment, and she failed to disclose her prior convictions. The

10  manager stated that defendant was employed as the front office supervisor and had access to all

11  patient records as part of her routine duties. The manager stated that, when Life Long Medical

12  Center learned of defendant's prior criminal history, defendant was asked to resign, but she refused.

13  Defendant told the manager that she wanted to be fired so that she could collect unemployment

14  payments. Life Long Medical Center terminated her employment on January 29, 2009.

15          5.      I declare under penalty of perjury that the foregoing is true and correct to the best of

16  my knowledge and belief.

17

18  ‫ ـ‬3 ‫ ـ‬2 ‫ ـ‬11                          _____
    Date                                      DEBORAH R. DOUGLAS
19                                            Assistant United States Attorney

20

21

22

23

24

25

26

27

28

**ATTACHMENT D**

AUSA Deborah Douglas' Declaration dated February 18, 2011

# DECLARATION

I, DEBORAH R. DOUGLAS, declare as follows:

     1.     I am an Assistant United States Attorney, and the prosecutor in *United States v. Cherry Worley*, CR 10-00524 DLJ.  The purpose of this declaration is to supplement information contained in my previous declaration dated March 2, 2010 which was attached to the government's sentencing memorandum under docket nos. CR02-40170 DLJ, CR03-40165 DLJ, and CR04-40051 DLJ.  I obtained the information below from conversations with the case agent, Special Agent Stephanie Henefeld of the U.S. Secret Service, and a review of her memorandum which was produced in discovery.

     2.     In addition to interviewing the manager of Life Long Medical on January 26, 2009, Special Agent Henefeld and Postal Inspector Muniz spoke on January 28, 2009 to the head of Human Resources for the Life Long Medical Group who stated that the social security number used by defendant on various forms contained in her personnel file did not belong to her (*e.g.*, the New Hire Checklist, State and Federal Withholding forms (W-4s), Life Insurance Forms, and Direct Deposit/Banking forms).  The agents identified the social security number (ending with 8413) used by defendant as belonging to Verma V., a 91-year old woman.

     I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

2/18/11
Date

DEBORAH R. DOUGLAS
Assistant United States Attorney